Je Yon Jung (SBN #329774)
**MAY JUNG LLP**
333 City Blvd. West
Suite 327
Orange, CA 9286
(818) 869-6476
jeyon@mayjung.com

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY GLENN WILLIAMS, *et al.,*<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, *et al.*,<br><br>Defendants. | 2:24−CV−04071−DOC−BFM<br><br>PLAINTIFFS' SUPPLEMENTAL RESPONSE IN SUPPORT OF OMNIBUS OPPOSITION TO LOS ANGELES COUNTY DEFENDANTS' FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS AND CITY OF LOS ANGELES'S FED. R. CIV. P. 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS |

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................... 1

II. ARGUMENT AND ANALYSIS .................................................................. 4

   A. *Heck* Does Not Bar Williams' Claims .................................................. 4

      1. Courts Have Consistently Held That Vacated Convictions Satisfy *Heck* Regardless of Grounds for Vacatur and Rejected Defendants' Narrow Reading to the Contrary ............................................................................ 5

      2. *Brady*-Based § 1983 Claims Can Proceed When an Original Conviction Is Vacated Despite Subsequent Pleas ................................................................................... 9

   B. The 2023 Plea Agreement and Attempted Murder Convictions May Only Affect the Quantum of Damages, a Factual Determination Inappropriate at the Motion to Dismiss Stage ................................................................................ 11

      1. Damages for Wrongful Incarceration Can Be Pursued Even After Plea Agreements If the Time Served Under the Vacated Conviction and the Plea Agreement Do Not Cover the Same Period of Incarceration ........................... 11

      2. Williams Has Sufficiently Alleged Damages for His Wrongful Conviction and Death Row Imprisonment .............. 12

   C. Under *Bradford*, Plaintiffs' Claims Related to the Dunn Murder Did Not Accrue Until the Charges Were Dismissed in 2021 ................................................................. 14

III. CONCLUSION ........................................................................................... 15

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Bradford v. Scherschligt*,
    803 F.3d 382 (9th Cir. 2015).................................................................. 14, 15

*Carey v. Piphus*,
    435 U.S. 247 (1978).................................................................................... 13

*Heck v. Humphrey*,
    512 U.S. 477 (1994)............................................................................. passim

*Jackson v. Barnes*,
    749 F.3d 755 (9th Cir. 2014)..................................................................... 9, 11

*Lemos v. Cty. of Sonoma*,
    40 F.4th 1002 (9th Cir. 2022) ........................................................................ 8

*Nilsson v. Baker Cnty.*,
    No. 2:19-cv-01250-HL, 2022 WL 17156771 (D. Or. Nov. 21, 2022) ................. 7

*Poventud v. City of N.Y.*,
    750 F.3d 121 (2d Cir. 2014)................................................................ passim

*Rambus Inc. v. Hynix Semiconductor Inc.*,
    569 F. Supp. 2d 946 (N.D. Cal. 2008) ............................................................ 6

*Roberts v. City of Fairbanks*,
    947 F.3d 1191 (9th Cir. 2020)........................................................... passim

*Roberts v. City of Fairbanks*,
    962 F.3d 1165 (9th Cir. 2020)........................................................................ 6

*Rosales-Martinez v. Palmer*,
    753 F.3d 890 (9th Cir. 2014).................................................................. 6, 10

*Savory v. Cannon*,
    947 F.3d 409 (7th Cir. 2020)......................................................................... 7

*Smith v. Gonzales*,
    222 F.3d 1220 (10th Cir. 2000)..................................................................... 9

*Taylor v. Cty. of Pima*,
  913 F.3d 930 (9th Cir. 2019) .............................................................. 3, 6, 10, 12

*Wallace v. Kato*,
  549 U.S. 384 (2007) ........................................................................................ 5

Plaintiffs Barry Glenn Williams ("Williams") and Damien Williams ("D. Williams") (collectively, "Plaintiffs"), by and through counsel, hereby submit this supplemental brief, in accordance with this Court's Minute Order, addressing the Court's tentative ruling announced at the November 12, 2024 hearing regarding the Rule 12(b) motions filed by Defendants County of Los Angeles, Carmen Trutanich, and Jim Jacobs ("County") (Dkt. No. 27) and Defendant City of Los Angeles ("City") (Dkt. No. 49). *See* November 20, 2024 Order (Dkt. No. 68) (authorizing supplemental briefing). Plaintiffs hereby incorporate and supplement their Omnibus Opposition to Defendants' Motions (Dkt. No. 55).

## I. INTRODUCTION

The key dispute before the Court is whether claims arising from Williams' wrongful murder convictions and 32 years on death row can proceed despite Defendants' arguments that they are *Heck*-barred and time-barred.

Plaintiffs contend that claims arising from the Dunn and Billingsley murder convictions are properly before this Court because: 1) the vacatur of the Billingsley murder conviction in May 2023 satisfies *Heck v. Humphrey* regardless of the grounds for the vacatur, and this vacatur lifted a critical barrier to Williams' ability to seek redress for his unconstitutional death sentence; 2) success on *Brady* and other constitutional claims would not necessarily imply the invalidity of the existing attempted murder convictions; and 3) the Dunn murder claims did not accrue until January 2021 when those charges were finally dismissed, making this action timely with applicable tolling.

Defendants contend that the May 2023 vacatur of Williams' Billingsley murder conviction pursuant to a plea agreement does not satisfy *Heck* because it was based on rehabilitation rather than innocence or some other means of

calling into question the underlying conviction. Thus, Defendants argue, the vacatur does not fall within any of *Heck's* enumerated categories, which include convictions (1) reversed on appeal, (2) expunged, (3) declared invalid by a tribunal, or (4) called into question by a federal habeas writ. Next, Defendants argue that Williams' remaining attempted murder and/or manslaughter convictions, which were not impacted by the 2023 plea agreement and related vacatur, bar his claims because success on his § 1983 claims would necessarily imply their invalidity. Finally, Defendants argue that any claims related to the Dunn murder conviction accrued in March 2016 when this Court granted habeas relief, making the current suit untimely.[1] For the following reasons, Defendants' arguments fail.

      First, the Billingsley conviction was vacated by a state tribunal authorized to make such determination, satisfying *Heck's* third enumerated requirement regardless of the grounds. Defendants' argument otherwise improperly conflates *Heck's* favorable termination requirement with the distinct favorable termination element required for malicious prosecution claims. As the Ninth Circuit explained in *Roberts v. City of Fairbanks*, for malicious prosecution claims, the termination must indicate innocence. This is an essential element that demonstrates the prosecution itself was improper. In contrast, *Heck* only requires favorable termination through one of four specified means, with the sole purpose of avoiding conflicting judgments. *And* when a judgment is vacated, meaning "to nullify or cancel; make void; *invalidate*[,]"there can be no

---

[1] At the November 12, 2024 hearing, counsel for the City and County divided their oral argument presentation, with each addressing different aspects of their shared positions. *See* Hr'g Tr. at 7:2-3. While some transcript citations herein may reference arguments made by counsel for only one Defendant, the arguments are attributed to both Defendants as they presented a unified defense strategy at the hearing.

PLAINTIFFS' SUPPLEMENTAL BRIEF ISO OPPOSITION TO DEFENDANTS' FED. R. CIV. P. 12 MOTIONS
PAGE 2

conflicting judgment in a subsequent § 1983 suit. The Second, Seventh, and Tenth Circuits have similarly held. Defendants' attempts to bar Plaintiffs' civil action by confining *Heck's* enumerated categories, despite clear and contrary precedent, must be rejected.

Second, Williams' plea to a lesser charge of manslaughter does not change this analysis. Indeed, *Roberts* itself involved a settlement agreement with a plea deal. The same applies to the attempted murder convictions remaining in this case. At most, these issues may limit damages for any unlawful confinement to the period exceeding what would have been justified by the voluntary manslaughter plea and attempted murder convictions, as both the Second Circuit in *Poventud v. City of New York* and the Ninth Circuit in *Taylor v. County of Pima* have held. Defendants' failure to analyze this distinction regarding how the plea agreement affects damages, as required under the Ninth Circuit's holding in *Lemos v. County of Sonoma*, should bar their argument on this point. Even had they, any damages determination requires discovery regarding time served under each conviction. Moreover, the Billingsley murder conviction was the sole special circumstance that placed Williams on death row for 32 years. None of his remaining convictions could support that sentence, and his damages from this unconstitutional death sentence could not have been determined until the Billingsley special circumstance was vacated in 2023. Thus, Defendants' argument, to the extent developed or relevant at all, relates to damages and is premature at this stage.

Finally, the Dunn conviction claims did not accrue until January 2021 when the charges were finally dismissed. Under controlling Ninth Circuit precedent in *Bradford v. Scherschligt*, a § 1983 claim does not accrue until criminal proceedings have conclusively terminated in a defendant's favor. The

prosecution retained the ability to retry Williams on the Dunn charges until 2021, making any civil suit before then premature. With tolling during Williams' imprisonment, this action was timely filed in 2024.

The Court should reject Defendants' attempt to deny Williams his day in court through an unfounded, overly rigid reading of *Heck* that ignores both Supreme Court and Ninth Circuit precedent establishing when wrongful conviction claims may proceed. After four decades of injustice, Williams is entitled to seek redress for the constitutional violations that resulted in his wrongful capital sentence.

## II. ARGUMENT AND ANALYSIS

### A.  *Heck* Does Not Bar Williams' Claims

Defendants argue that Williams' claim is barred for two reasons. First, they contend that the vacatur of his conviction does not meet *Heck's* favorable termination requirement because it was based on rehabilitation rather than a challenge to the validity of the conviction itself. Hr'g Tr. at 8:19-22; 14:6-10; 10:11-13. Second, Defendants argue that Williams' standing attempted murder convictions and his plea to manslaughter in connection with the vacatur preclude his *Brady*-based § 1983 claims. *Id.* at 10:13-18. Defendants are wrong.

Under *Heck*, the only question is whether the conviction was invalidated through one of four specified means—declared invalid by a state tribunal being the relevant one here. The fact that Williams' conviction was vacated satisfies this requirement, regardless of the grounds for vacatur. Further, even if other convictions remain intact, claims based on *Brady* violations, which concern the fairness of the trial rather than actual innocence, can proceed once the relevant conviction is vacated. While remaining convictions and subsequent pleas may limit

damages, they do not per se bar claims where the conviction impacted by the alleged *Brady* violation has been vacated.

1. Courts Have Consistently Held That Vacated Convictions Satisfy *Heck* Regardless of Grounds for Vacatur and Rejected Defendants' Narrow Reading to the Contrary

The Ninth Circuit's thorough analysis in *Roberts v. City of Fairbanks*, cited in Plaintiffs' Opposition to Defendants' motions and during the November 12, 2024 hearing, is particularly instructive. 947 F.3d 1191 (9th Cir. 2020). The *Roberts* court began with *Heck's* foundational principle: "If the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to suit." *Id*. at 1198 (emphasis in original). Analyzing whether vacatur of a conviction through state court proceedings satisfies *Heck*, the court emphasized that when "there remains no outstanding criminal judgment nor any charges pending," the *Heck* bar is inapplicable because "the plain language of [*Heck*] requires the existence of a conviction in order for a § 1983 suit to be barred." *Id*.

The defendants in *Roberts*, like Defendants here, argued that convictions vacated pursuant to settlement agreements could still be "valid" and thus bar § 1983 claims. The Ninth Circuit squarely rejected this argument, explaining that "vacate" by definition means "to nullify or cancel; make void; *invalidate*." *Id*. (citing Black's Law Dictionary) (emphasis in original); *see also Wallace v. Kato*, 549 U.S. 384, 393 (2007) (stating the "setting aside of *an extant conviction*" removes *Heck* bar) (emphasis in original). The Ninth Circuit explained that this interpretation was further supported by its prior decisions in *Taylor v. County of Pima*, 913 F.3d 930

PLAINTIFFS' SUPPLEMENTAL BRIEF ISO OPPOSITION TO DEFENDANTS' FED. R. CIV. P. 12 MOTIONS
PAGE 5

(9th Cir. 2019) and *Rosales-Martinez v. Palmer*, 753 F.3d 890 (9th Cir. 2014).[2] As to *Taylor*, the *Roberts* court highlighted the following:

> Taylor specifically challenged "his 1972 prosecution, convictions, and sentence and [did] not challenge his 2013 'no contest' pleas," recognizing that *Heck* would bar only the non-vacated judgment. *Taylor*, 913 F.3d at 935 (internal quotation marks omitted). We agreed that the 2013 judgment was valid because it had not been vacated, unlike the 1972 conviction. *Id*.

*Roberts*, 947 F.3d at 1199. As to *Rosales-Martinez*, the *Roberts* court concluded it "implicitly held that vacating a conviction pursuant to a settlement agreement serves to invalidate the conviction under *Heck*" as evidenced by the fact that "we stated that "Rosales-Martinez pleaded guilty to one of the four counts of his original conviction, *with the other three being held invalid*." *Id*. at 1200 (citing *Rosales-Martin*, 753 F.3d at 899) (emphasis in original).

The *Roberts* court opined that attempts to restrict *Heck's* third means of favorable termination, convictions declared invalid, stem from an improper "conflation of the favorable-termination rule in the tort of malicious prosecution with *Heck's* four distinct means of favorable termination." *Id.* at 1201. The court explained that while *Heck* drew from malicious prosecution law, the two have

---

[2] The City asks this Court follow Judge Ikuta's reasoning in her *Roberts* dissent and the dissent from denial of rehearing *en banc* in *Roberts*. Hrg. Tr. at 8:11-17. This is impermissible. *See Rambus Inc. v. Hynix Semiconductor Inc.*, 569 F. Supp. 2d 946, 964 (N.D. Cal. 2008) (stating, "only the court that issued the decision in question can elect not to follow it.") The *en banc* dissent recognized *Roberts* is now "binding precedent in this Circuit[,]" "cementing" the law in the Ninth CircuitEven if the reasoning could be considered, it is distinguishable because the *en banc* dissent considered that the *Roberts* plaintiffs "expressly agreed that the convictions were 'properly and validly' obtained." *Id*. at 1172. Williams makes no such concession about his vacated murder conviction.

PLAINTIFFS' SUPPLEMENTAL BRIEF ISO OPPOSITION TO DEFENDANTS' FED. R. CIV. P. 12 MOTIONS
PAGE 6

distinct purposes for requiring favorable termination; namely, malicious prosecution requires it as an element to prove the prosecution itself was improper, while *Heck* requires it solely to prevent conflicting judgments about the same conviction, a purpose satisfied when a conviction is vacated. *Id*. at 1201-02. As such, the court refused to adopt additional requirements for the "declared invalid" favorable termination category, holding instead that "where, as here, a § 1983 plaintiff's conviction is vacated by a state court, that conviction has been 'declared invalid by a state tribunal authorized to make such determination'" under *Heck*. *Id*. at 1203. *See also Nilsson v. Baker Cnty.*, No. 2:19-cv-01250-HL, 2022 WL 17156771, at *14-15 (D. Or. Nov. 21, 2022) (relying on *Roberts* to hold vacatur under Oregon's "set aside" statute satisfies *Heck*).

The Second Circuit reached the same conclusion in *Poventud v. City of New York*, denying attempts to restrict § 1983 claims based on grounds for vacatur. 750 F.3d 121 (2d Cir. 2014). As in *Roberts*, the Second Circuit explained that unlike malicious prosecution's dual goals of preventing conflicting resolutions and ensuring innocence, *Heck* requires invalidation solely to avoid conflicting judgments—a purpose satisfied by vacatur. *Id.* at 130-31. The court thus held § 1983 claims require no particular showing about why a conviction was vacated, as "many violations of constitutional rights, even during the criminal process, may be remedied without impugning the validity of a conviction." *Id.* at 132.

Courts have likewise rebuffed efforts to require innocence showings across other of *Heck's* favorable termination categories. The Seventh Circuit in *Savory v. Cannon* rejected arguments that pardons must demonstrate innocence to fall within expungement, *Heck's* second enumerated category, explaining that, "If the Court had wanted to specify that the pardon must be based on innocence, it certainly could have done so, but it did not. Instead, the Court offered a list of possible resolutions

that would satisfy the favorable termination requirement, and none require an affirmative finding of innocence." 947 F.3d 409, 429 (7th Cir. 2020).[3] The Seventh Circuit further emphasized that "any of [*Heck's*] outcomes can occur without a declaration of defendant's innocence." *Id.*; *see also Roberts*, 947 F.3d at 1202 (noting that convictions "called into question by a federal court's issuance of a writ of habeas corpus[,]"*Heck's* fourth enumerated category, need not indicate innocence, as required for malicious prosecution claims).

Under this substantial body of precedent, Williams' § 1983 claims should proceed. Williams challenges constitutional violations in his vacated Billingsley murder conviction. Just as the Ninth Circuit in *Roberts* held that "vacate" means "invalidate" regardless of the grounds, the fact that Williams' murder conviction was vacated even if based partly on his rehabilitation (an issue outside the scope of the complaint and thus the pending motions) does not diminish *Heck's* recognition of vacatur as invalidation. For the same reason, Defendants' argument that "there was no judicial finding as to the merits" of Williams' 1172.6 petition that predated the settlement agreement and court vacatur fails.

Defendants' reliance on *Lemos v. County of Sonoma*, 40 F.4th 1002 (9th Cir. 2022), to argue that "*Heck* doesn't allow for a license to go to Section 1983 litigation simply because any conviction is vacated," Hr'g Tr. at 8:22-24, does not change this analysis. *Lemos* held only that "applying *Heck* requires looking at the factual basis for a conviction, regardless of whether that conviction is based on a jury verdict or a guilty plea." *Id.* at 1008. *Lemos* analyzed this factual basis for a conviction solely to determine whether success on § 1983 claims would necessarily imply the invalidity of a *standing* conviction. It said nothing about the effect of

---

[3] Notably, the Seventh Circuit's "could have, but did not" logic likewise defeats the City's argument that "if the Supreme Court wanted to change the law, it could have done so." *See* Hr'g Tr. at 9:4-5.

PLAINTIFFS' SUPPLEMENTAL BRIEF ISO OPPOSITION TO DEFENDANTS' FED. R. CIV. P. 12 MOTIONS
PAGE 8

vacated convictions. Here, *Lemos'* factual basis examination is relevant only to whether success on Williams' § 1983 claims would necessarily imply the invalidity of his current manslaughter and attempted murder convictions, not whether his vacated murder conviction satisfies *Heck's* favorable termination requirement. Even then, as detailed in Section II.B., these convictions cannot bar his claims because they do not independently justify his death row incarceration. The City's attempt to extend *Lemos* beyond its holding effectively nullifies *Heck's* enumerated methods for lifting its bar to § 1983 actions and should be rejected.

### 2. *Brady*-Based § 1983 Claims Can Proceed When an Original Conviction Is Vacated Despite Subsequent Pleas

Defendants' *Brady* arguments have similarly been considered and rebuffed. As a preliminary matter, *Brady* violations can support § 1983 claims without proof of factual innocence because unlike malicious prosecution claims, *Brady's* prejudice element turns on what would have been proven absent the violation, not on innocence. *Poventud*, 750 F.3d at 134. Thus, while *Brady* claims where the conviction remains intact necessarily implicate *Heck's* bar, because the remedy for a *Brady* violation is vacatur and a new trial where the defendant can use the previously suppressed material, *Heck* poses no barrier to § 1983 *Brady* claims when the underlying conviction no longer stands. *Id*. at 133-34; *accord Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000); *see also Jackson v. Barnes*, 749 F.3d 755, 761 (9th Cir. 2014) (discussing same with approval and applying in context of *Miranda* violations). This is because, as explained in detail in the preceding section, vacating a conviction invalidates the state court judgment, and "from that moment on, a § 1983 suit would not demonstrate the invalidity of the vacated conviction." *Id*. at 134 (quoting *Smith*, 222 F.3d at 1222). Moreover, such suits cannot affect any retrial, which necessarily occurs after disclosure of the *Brady* material. *Id*.

*Poventud* established clear parameters for *Brady*-based § 1983 claims: (1) the claim must relate only to the vacated conviction, not any subsequent plea; (2) if the claim sounds in malicious prosecution rather than *Brady* violations, it remains subject to the traditional favorable termination requirement; and (3) damages cannot include time served pursuant to valid plea agreements. *Id*. at 136-37 (applying parameters to hold Poventud's claims cognizable because his complaint alleged deficiencies in his original trial independent of subsequent proceedings, stated claims distinct from malicious prosecution, and sought damages excluding time served under his valid plea.)

Like *Poventud*, Williams' *Brady* claims relate specifically to his vacated murder conviction and are independent of his subsequent plea to manslaughter. His complaint alleges deficiencies in the original prosecution that are distinct from malicious prosecution claims. While his damages may be affected by time served under existing convictions, as discussed in more detail in section II.B. below, this is a factual question of damages limitation, not claim viability. *See Poventud*, 750 F.3d at 136-37. Ultimately, the fact that Williams pled to a lesser offense does not retroactively validate the constitutional violations that tainted his original conviction and subjected him to decades on death row. As in *Roberts*, *Taylor*, *Rosales-Martinez*, and *Poventud*, Williams may challenge his vacated conviction while accepting the validity of his subsequent plea. The weight of authority makes clear that Defendants cannot resurrect *Heck's* bar by asking this Court to scrutinize the grounds for vacatur that *Heck* itself does not require.

B.  **The 2023 Plea Agreement and Attempted Murder Convictions May Only Affect the Quantum of Damages, a Factual Determination Inappropriate at the Motion to Dismiss Stage**

At the November 12, 2024 hearing, Defendants emphasized that Williams' attempted murder and conspiracy convictions remain intact and were never "overturned or touched." Hr'g Tr. at 9:8-15. Defendants further argued that Williams ultimately pled to a lesser manslaughter charge. *Id*. at 7:7-12. These arguments suggest that Williams' remaining convictions should limit his ability to pursue his claims. Not so. At most, these convictions may affect the quantum of damages recoverable. This is a factual determination inappropriate at the motion to dismiss stage. They do not bar Williams' claims entirely. The Ninth Circuit and its sister circuits have consistently allowed such claims to proceed despite subsequent pleas or remaining convictions.

1.  **Damages for Wrongful Incarceration Can Be Pursued Even After Plea Agreements If the Time Served Under the Vacated Conviction and the Plea Agreement Do Not Cover the Same Period of Incarceration**

In *Jackson*, the Ninth Circuit addressed whether a plaintiff could pursue claims and recover damages for incarceration time when some convictions were vacated while others remained valid. 749 F.3d at 758. A jury had originally convicted Jackson of both rape and murder. *Id*. After his murder conviction was vacated—but not his rape conviction—he was later convicted again of murder at a retrial. *Id*. at 759. The court held that Jackson could not recover compensatory damages for his imprisonment because his time in prison was fully supported by his original, unchallenged rape conviction. *Id*. at 762. In other words, he was "not imprisoned for any additional time as a result of his first, illegal conviction." *Id*. In short, *Jackson* establishes that the damages analysis turns on whether the challenged

conviction resulted in imprisonment beyond what was justified by valid convictions, not by the existence of a plea agreement.

The Ninth Circuit further developed this principle in *Taylor v. County of Pima*, where the plaintiff challenged his 1972 conviction while accepting his 2013 no-contest plea. 913 F.3d 930, 935 (9th Cir. 2019). The court held that while the plaintiff's time served was "supported by the valid 2013 state-court judgment," this affected only his damages, not his ability to challenge constitutional violations in his original conviction. *Id*. Recognizing the distinction between damages and the right to pursue § 1983 claims, *Taylor* noted that "*Heck* would bar only the non-vacated judgment." *Id*.

### 2. Williams Has Sufficiently Alleged Damages for His Wrongful Conviction and Death Row Imprisonment

The constitutional violations alleged in Williams' complaint led to his capital murder conviction and resulted in 32 years on death row. In 2023, when Williams entered his manslaughter plea, he received a sentence of 8 years and 8 months—a fraction of the 41 years he had already served under his vacated conviction. (Dkt. 56-2 p. 46).

Even assuming arguendo that Williams' 2023 plea agreement and attempted murder convictions could affect the quantum of incarceration damages recoverable—a premature factual determination at this stage—Williams has adequately alleged compensable injuries. First, no conviction could retroactively justify his placement on death row, a unique and severe deprivation flowing solely from the vacated murder conviction. Second, assuming arguendo, even if Williams could recover no incarceration-related damages whatsoever (which is not the case), he would still be entitled to nominal damages and attorney's fees for the violation of his constitutional

PLAINTIFFS' SUPPLEMENTAL BRIEF ISO OPPOSITION TO DEFENDANTS' FED. R. CIV. P. 12 MOTIONS
PAGE 12

rights. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("the denial of procedural due process should be actionable for nominal damages without proof of actual injury"); *Poventud*, 750 F.3d at 135 ("in other contexts, this Court has recognized procedural claims under § 1983 even when the denial of due process did not result in concrete injury").

To the extent that questions exist about the precise quantum of incarceration damages given Williams' other convictions, such determinations are premature at the motion to dismiss stage and would require factual development through discovery. Neither the City nor the County conducted any *Lemos* analysis in their moving papers to identify which specific constitutional violations alleged in the complaint would necessarily impugn the validity of the attempted murder convictions. Defendants cannot raise these granular post-hoc arguments for the first time in reply hereto.[4] Moreover, determining whether and how specific *Brady* violations or other alleged constitutional deprivations might implicate the attempted murder convictions requires discovery and factual development[5] inappropriate at the motion to dismiss stage. What requires no discovery or factual development is that Williams spent 32 years on death row solely because of the now-vacated murder conviction serving as a

---

[4] In the event Defendants nonetheless address such issues on reply for the first time, and this Court is inclined to consider the arguments, Plaintiffs respectfully request additional supplemental briefing.

[5] By way of example, Plaintiffs require discovery on topics including: (1) what Brady materials were suppressed that specifically related to the attempted murder charges versus only the murder charge; (2) the scope of exculpatory evidence that was destroyed regarding alternative suspects and other witness statements related to each individual charge; and (3) documents showing how prosecutors used informant evidence and testimony differentially across charges, including any evidence that certain constitutional violations were confined to developing the murder cases.

special circumstance, a deprivation the attempted murder convictions could not and did not support.

### C. Under *Bradford*, Plaintiffs' Claims Related to the Dunn Murder Did Not Accrue Until the Charges Were Dismissed in 2021

Defendants argue that Plaintiffs' Dunn-related claims accrued in March 2016 when this Court granted habeas relief. But this ignores controlling Ninth Circuit precedent establishing that § 1983 claims do not accrue while criminal charges remain pending. In *Bradford v. Scherschligt*, the Ninth Circuit held that where criminal charges could still be pursued after a conviction is vacated, the § 1983 claim does not accrue until those charges are conclusively resolved in the defendant's favor. 803 F.3d 382, 388-89 (9th Cir. 2015). The court explained that until charges are dismissed, such that they cannot be revived, a civil suit challenging the constitutional violations would be premature since the same evidence could be used to obtain a new conviction. *Id.*

Defendants attempt to distinguish *Bradford* by arguing it applies only where the same evidence would be used at retrial. But this argument fails for two reasons. First, even after this Court's habeas order precluded use of certain tainted evidence, Williams had no way to know whether prosecutors would pursue a retrial using other evidence or witnesses from the original investigation, or develop new evidence altogether.[6] To require Williams to file his § 1983 claims while prosecutors still had five years to build a new case would create precisely the risk of conflicting resolutions that *Heck* sought to avoid. Second, *Bradford* itself recognized its holding would not apply "if the conviction was set aside in a manner precluding the government from maintaining charges on

---

[6] Defendants' suggestion that Williams or his counsel should have divined prosecutorial decision-making, Hr'g Tr. at 11:1-8, is unreasonable, unsupported, and unduly burdensome.

evidence presented at the initial trial." *Id*. at 388. That exception does not help Defendants here because while this Court's habeas order barred use of some constitutionally tainted evidence, it did not preclude a retrial altogether. Instead, as in *Bradford*, the prosecution remained free to pursue the same charges until formally dismissing them in 2021.

The Second Circuit reached the same conclusion in *Poventud*, holding that Brady-based § 1983 claims do not accrue until charges are dismissed, even where a defendant accepts a plea to lesser charges. 750 F.3d at 136. This makes sense because a civil suit challenging *Brady* violations would be premature while criminal charges remained pending, because the prosecution could still pursue those charges without the suppressed evidence.

Here, Williams' Dunn murder conviction was vacated in March 2016, but the charges remained pending until January 2021. Under *Bradford* and *Poventud*, his claims did not accrue until the charges were dismissed. With statutory tolling during his imprisonment, this action was timely filed in 2024.

### III.  CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request the Court deny the City's Motion for Judgment on the Pleadings and the County's Motion to dismiss.

DATE: January 31, 2025                    Respectfully submitted,

*/s/ Je Yon Jung*
JE YON JUNG (SBN #329774)
**MAY JUNG LLP**
333 City Blvd. West
Suite 327
Orange, CA 92868
(818) 869-6476
jeyon@mayjung.com

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed using this court's ECF system and counsel of record for all parties will be served accordingly.

<u>*/s/ Je Yon Jung*</u>
Je Yon Jung

*Attorney for Plaintiffs*